IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

**ERIC DOYLE**, individually and on behalf of similarly situated persons,

Plaintiff,

v.

**BE HURD, INC., TAH PIZZA, INC.,** and **TIMOTHY HURD**,

Defendants.

Case No. 3:20-cv-138-DCLC-HBG

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

Plaintiff, Eric Doyle, individually and on behalf of similarly situated persons ("Plaintiff"), by and through his undersigned counsel, respectfully requests that this Court grant final approval of the Settlement and Release Agreement ("Agreement") [Dkt. #20-2][1] reached by the Parties to this action. Defendants, Be Hurd, Inc., TAH Pizza, Inc., and Timothy Hurd (together "Defendants") do not oppose this Motion. As set forth below, the Agreement is fair, reasonable, and adequate and should be approved by the Court. Accordingly, Plaintiff respectfully requests the Court issue an Order:

(1) finally approving the Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(2) finally certifying the collective action pursuant to Section 216(b) of the FLSA.

(3) approving distribution of the Net Settlement Fund, as defined in the Agreement,

---

[1] The Agreement was filed with the monetary terms redacted and the Court was provided with an unredacted copy for *in camera* inspection.

to the Settlement Class Members;

(4) approving payment of the actual costs of the Settlement Claims Administrator in the amount of $14,720.68;

(5) permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against Defendants and the Released Parties any and all of the Settlement Class Members' Released Claims;

(6) permanently enjoining the Class Representative from prosecuting against Defendants and the Released Parties any and all of the Class Representative's Released Claims; and

(7) dismissing this case with prejudice in accordance with the terms of the Agreement.

## I. INTRODUCTION

This class and collective action lawsuit for unpaid minimum wages against Defendants was settled following a full-day mediation between the Parties, subject to the Court's approval. This settlement was also informed by the prior litigation of *Otis v. TAH Pizza, Inc. et al.,* Case 2:18-cv-00111 (E.D. TN), where this District already certified and approved a settlement of similar claims covering an FLSA opt-in only collective of Defendants' drivers and involving the same counsel. On September 25, 2020, the Court granted the Parties' Joint Motion For Preliminary Approval of Class and Collective Action Settlement Agreement. (Dkt. #20). Pursuant to that Order (Dkt. #21), the Parties, through the third-party administrator, sent the approved Notice of Class Action Settlement and Claim Form to all Settlement Class Members, thereby notifying all Settlement Class Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's Order. Following notice, there were no objections to the Agreement and the administrator received no requests for exclusion (opt-outs). Similarly, no Settlement Class Member has requested to participate in the Fairness Hearing. *See generally*, Declaration of Nancy Johnson, President of CAC Services Group, LLC

("Johnson Decl."); *see also* Exhibit B, Status Report from Third Party Administrator. For the reasons set forth below, the Court should grant Plaintiff's motion.

## II. BACKGROUND

Plaintiff filed this lawsuit ("the Litigation") on behalf of himself and similarly situated Delivery Drivers who were hired to deliver pizzas for Defendants. Plaintiff alleges Defendants violated the Fair Labor Standards Act ("FLSA") and related state laws by failing to pay him and other similarly situated Delivery Drivers the lawful and applicable minimum wage because their expense reimbursements were alleged to be insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants categorically deny Plaintiff's allegations and submit Plaintiff and all other delivery drivers were paid lawfully and in compliance with the FLSA and related state laws. The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day in-person mediation before an experienced wage and hour class and collective action mediator, Allen Blair, Esquire, that took place on August 3, 2020. Prior to the mediation, the Parties engaged in limited pre-mediation discovery that included the production of mileage and mileage reimbursement data for each store where Settlement Class Members were employed by Defendants. In preparation for the mediation, the Parties drafted detailed mediation statements and damages analyses. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and applicable state laws. Utilizing these calculations, Plaintiff concluded he had sufficient information concerning Plaintiff's claims and Defendants' defenses from which to reach a fair and arms-length settlement of this matter. The terms of the Parties' settlement are set forth in the Parties' Agreement.

From Plaintiff's perspective, the Agreement provides an excellent outcome for the Settlement Class Members. Defendants contend that they properly reimbursed the Delivery

Drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hour laws. Defendants further contend that even if liability were established by Plaintiffs, which they deny, they acted in good faith and that a two-year, as opposed to an extended statute of limitations, should apply to Plaintiff's claims. Defendants also dispute that Plaintiff's claim is appropriate for class or collective action treatment, except for settlement purposes. If the Court were to accept these arguments, it would negate a substantial percentage, or all of the alleged damages in the case and disqualify a large number of Delivery Drivers who were employed by Defendants outside of the two-year federal statutory period.

Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Settlement Class Members who were employed by Defendants in Tennessee, Virginia, and Kentucky during the maximum potentially applicable statutory periods. Plaintiff respectfully submits that this Motion should be granted because the proposed Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

## III. THE TERMS OF THE AGREEMENT

The Parties negotiated the Agreement on behalf of a Settlement Class of Delivery Drivers defined as:

> All Kentucky, Tennessee, and Virginia-based delivery drivers employed by Defendants during the Release Period, which is defined as follows:
>
> - April 1, 2015, through September 25, 2020, excluding those drivers who participated in *Otis v. TAH Pizza, Inc.*, Case No. 2:18-cv-00111-HSM-CRW, and who did not work for Defendants after May 24, 2019, for Kentucky Class Members;
>
> - April 1, 2017, through September 25, 2020, excluding those drivers who participated in *Otis v. TAH Pizza, Inc.*, Case No. 2:18-cv-00111-HSM-CRW, and who did not work for Defendants after May 24, 2019, for Tennessee Class Members; and
>
> - April 1, 2017, through September 25, 2020, excluding those drivers who participated in *Otis v. TAH Pizza, Inc.*, Case No. 2:18-cv-00111-HSM-CRW,

and who did not work for Defendants after May 24, 2019, for Virginia Class Members.

The Agreement allowed Delivery Drivers to participate in the Settlement by filing a Claim Form during the notice period, even though a similar period had already occurred in *Otis v. TAH Pizza, Inc*. The Agreement provides that even those Delivery Drivers who elected not to file a claim would still receive a minimum payment amount, as specified in the Agreement. Following the class action settlement notice, no drivers opted-out of the settlement and no objections to the settlement were filed. *See* Johnson Decl. at ¶¶ 11,12; *see also* Exhibit B, Status Report from Third Party Administrator.

Pursuant to the Agreement, the Total Settlement Fund is $260,000.00. Subject to this Court's final approval, the total payments to be made by Defendants under the Agreement (the Maximum Settlement Amount) are as follows:

1. The Settlement Claims Administrator, CAC Services Group, LLC, will receive an amount not to exceed $15,000.00;

2. Plaintiff Doyle will receive $3,000.00 as a service award in recognition of the work involved and the benefits achieved by the Plaintiffs;

3. Class Counsel will receive $80,720.00 in attorneys' fees and $5,080.00 in advanced litigation costs;

4. All Authorized Claimants will receive their share of the applicable FLSA Claim Fund, which shall be up to $17,882.49 for Tennessee Class Members and up to $3,059.61 for Kentucky and Virginia Class Members.

5. All Settlement Class Members who did not submit a claim, but did not excluded themselves from the settlement will be eligible for a minimum payment of $32.50 from the Minimum Payment Funds, which shall be up to $23,192.81 for Tennessee

Class Members and up to $3,583.13 for Kentucky and Virginia Class Members;

6. All Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement will remain eligible to submit a claim for up to the full amount of their Potential Settlement Payment (as defined in the Agreement), less any minimum payment already received, from the Reserve Fund, which will initially be funded by $15,000.00 of the Total Settlement Fund and will include any unclaimed funds from the aforementioned settlement funds. The Reserve Fund will remain until September 25, 2023 and any funds remaining after that date will be returned to Defendants by the Administrator.

## IV. THE COURT SHOULD APPROVE THE AGREEMENT

In the Sixth Circuit, there is a three-step process for approving class action settlements: (1) the court preliminarily approves the proposed settlement; (2) the class members receive notice of the proposed settlement; and (3) after a hearing, the court finally approves the settlement. *Tenn. Assoc. of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-566 (6th Cir. 2001). This Court has already preliminarily approved the proposed settlement and Class Members have received noticed of the proposed settlement. No Class Members have objected to the settlement, no requests for exclusion were received, and the Court should finally approve the settlement for the additional reasons that follow.

### A. Standard for Final Approval of Class Settlements

Public policy strongly favors the settlement of disputes without litigation. *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010). Accordingly, settlement agreements should be upheld whenever equitable and policy considerations so permit. *Robinson*, 566 F.3d at 648. This is

especially true in class action litigation, in which there is a "particularly muscular" presumption in favor of class action settlements. *Whitlock v. FSL Mgmt., LLC*, 842 F.3d 1084, 1094 (6th Cir. 2016) (quoting *Ehrhart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)); *see also Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *Lonardo*, 706 F. Supp. 2d at 778 (same).

Parties settling a class action must seek approval of the settlement from the Court. FED. R. CIV. P. 23(e). Under Rule 23(e)(2), at the final approval stage, the Court ultimately must determine that the settlement is "fair, reasonable, and adequate." *UAW*, 497 F.3d at 625. The Court has broad discretion in evaluating a class action settlement and its decision to approve a settlement will be reversed only for an abuse of discretion. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013). Notwithstanding its discretion, the Court's evaluation of the Settlement is guided by the following "presumptions and rules": "that settlement is favored; that a settlement reached at arms-length is presumed to be fair; [and] that a court must accept or reject the settlement but cannot rewrite it." *In re Amazon.com, Inc. Fulfillment Center FLSA and Wage and Hour Litig.*, 2016 WL 9558953, at *2 (W.D. Ky. Oct. 31, 2016) (quoting Newberg on Class Actions § 13:43 (5th ed. 2016)). For the reasons that follow, approval of the Settlement Agreement is warranted.

### 1. The Proposed Settlement Was Honestly and Fairly Negotiated

The fairness of the settlement negotiation should be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and any coercion or collusion that may have marred the negotiations themselves. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983). The primary concern is the protection of class members whose rights may not have been given adequate

consideration during settlement negotiations. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. The Parties investigated the merits of the claims and Defendants' defenses and engaged in mediation. *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, Civil Action No. 06-299-JBC, 2008 WL 2885230, at *6 (E.D. Ky. Oct. 23, 2008) (finding no risk of fraud or collusion relative to final approval, where settlement was "the product of arm's length, good-faith settlement negotiations" reached after mediation through "an experienced, third-party neutral mediator"); *Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

Through formal and informal discovery, each Party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion.

### 2. Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C*., 636 F.3d 235, 245 (6th Cir. 2011) (*quoting In re Gen. Tire & Rubber Co. Sec. Litig*., 726 F.2d 1075, 1086 (6th Cir. 1984)). As the Sixth Circuit has explained, "the likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *Id*. Accordingly, a plaintiff's likelihood of success on the merits must be "weigh[ed] . . . against the amount and form

of relief offered in the settlement." *UAW*, 497 F.3d at 631. In weighing the likelihood of success, the Court should not "decide the merits of the case or resolve unsettled legal questions." *Id*. at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). The court's "task is not to not to decide whether one side is right or even whether one side has the better of these arguments." *Id*. at 632. Rather, the critical question is "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id*.

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. To continue through trial would expose the Parties to significant risks. *See Brent v. Midland Funding, LLC*, No. 3:11-cv-1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (citing to 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.2002) that "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Plaintiff believes that his claims are strong, but recognizes that success is not guaranteed. Plaintiff believes Defendants violated the FLSA and state law by failing to pay him and other similarly situated Delivery Drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants, however, contend that they properly reimbursed the Delivery Drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hour laws. Defendants are also confident that Plaintiffs would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine the Class Members' damages. Nonetheless, while Defendants believe that their defenses are strong, they recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the two-year period for non-willful violations would be applicable in this matter or whether a longer period could apply. Second, Defendants contend their actions were at all times taken in good faith, negating the FLSA's liquidated damages provision. Third, Defendants dispute that class or collective action treatment is appropriate in this case. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Value Of Immediate Recovery Outweighs The Possibility Of Any Future Relief

In deciding whether a settlement is fair, reasonable, and adequate, a factor Courts consider is whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Granada Investments, Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1080 (6th Cir. 1984). A finding that the value of an immediate recovery outweighs the possibility of future relief can be made after a competent evaluation of the case by counsel. *Granada Investments, Inc. v. DWG Corp.*, 1:89CV0641, 1991 WL 338233, at *8 (N.D. Ohio Feb. 12, 1991), aff'd, 962 F.2d 1203 (6th Cir. 1992). The benefit of a proposed settlement framework "outweighs the value of any remedy that litigation might produce." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 628 (6th Cir. 2007). The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties will engage in additional discovery, including depositions of the individual Defendants, Plaintiff, and, if the case were certified as a class action, a representative sample of class members.

The parties also would have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Class Certification and Approval of Notice, as well as Defendants' Motion to Decertify the Class, if the Court does certify a class, and Motions for Summary Judgment as to various issues in the case. The trial would include testimony by representatives of the Defendants, Class Members (if certified), and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for the Settlement Class Members or a significant judgment against Defendants which could bankrupt them, leaving nothing for the Settlement Class Members to recover. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 525 (E.D. Mich. 2003) ("Certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal.").

### 4. Counsel Believe The Settlement Is Fair And Reasonable

Counsel for both sides fully support the Settlement Agreement, and in deciding whether a proposed settlement warrants approval "the informed and reasoned judgement of counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 3:08-MD-01998, 2010 WL 3341200, at *7 (W.D. Ky. Aug. 23, 2010); *see also Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), aff'd sub nom. *Poplar Creek Dev. Co. v. Chesapeake*

*Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). When evaluated in light of the four factors identified by this Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. Standard for Approval of FLSA Settlements

As stated above, the settlement provides relief for individuals who have filed Claim Forms and for those who have chosen not to opt-out of the settlement, and even for those who choose to file a Claim Form at a later time through the negotiated Reserve Fund. For many of the reasons stated above regarding settlements under Rule 23, the settlement is a fair and adequate resolution under the FLSA and ought to be approved.

In a lawsuit brought by an employee against his or her employer under Section 216(b), the employee may settle and release FLSA claims if the parties present to the court a proposed settlement and the court approves the settlement. *Rampersad v. Certified Installation*, LLC, No. 1:12-CV-00032, 2012 U.S. Dist LEXIS 167156, *2 (E.D. Tenn. Nov. 26, 2012). The settlement should be approved when it is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *2 (E.D. Ky. Oct. 23, 2008) (same).

As explained above, the Parties are represented by experienced and competent counsel and the Parties engaged in extensive negotiations. In addition, counsel for the Parties have discussed at considerable length Plaintiffs' assertions and Defendants' defenses, and their respective legal theories in support of their positions. This settlement of these claims results from a compromise between the Parties on a variety of *bona fide* disputes regarding issues of law and fact, including the applicable reimbursement rate for the Delivery Drivers' vehicle expenses and the propriety of Defendants' use and application of a tip credit. The Settlement occurred only after informal

discovery, including production of payroll and reimbursement records to facilitate both Parties' ability to make detailed legal and factual analyses of the claims and defenses, arms-length negotiation between Plaintiffs' counsel and Defendants' counsel, and a full-day mediation with a mediator experienced in resolving wage & hour disputes under the FLSA. The Parties stipulate that they are resolving the matter to avoid unnecessary further costs, time, and risks associated with continuing this litigation. The Parties also considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a settlement would be in the public's interest.

The Settlement negotiated in this case reflects a reasonable compromise of the disputed issues and other relevant considerations. All Parties, through their attorneys, voluntarily agreed to the terms of the Settlement during negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation, negotiation, and settlement process. The Settlement amounts apportioned to the different Opt-Ins will take into account and be apportioned based on the specific number of miles driven and rate of reimbursement of each Opt-In. Counsel for all Parties agree that, in their respective opinions, the settlement is fair and reasonable under the circumstances. Because the Settlement agreed to by the Parties is a fair and equitable compromise of a *bona fide* dispute, Plaintiff requests that the Court approve the Settlement and enter a final judgment dismissing the case, in its entirety, with prejudice.

## V. CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Settlement Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an equally

experienced mediator. For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the Settlement.

                                                                                                                       RESPECTFULLY SUBMITTED,

                                                                   */s/ J. Forester*
                                                                   J. Forester
Texas Bar No. 24087432
**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, TX 75020
Phone: 214-210-2100
Fax: 214-346-5909
Email: jay@foresterhaynie.com

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with defense counsel and pursuant to this conference and in accordance with the terms of the Settlement Agreement was advised that Defendants do not oppose the relief sought.

*/s/ J. Forester*
J. Forester

## CERTIFICATE OF SERVICE

A copy of the foregoing document was electronically served on all counsel of record.

*/s/ J. Forester*
J. Forester